TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00796-CV






Fred Glazener and James Slagle, Appellants


v.


John M. Jansing, Jr., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. GN202629, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 Fred Glazener and James Slagle appeal from the default judgment rendered against
them and in favor of John M. Jansing, Jr. Appellants complain that Jansing failed to serve his
motion for default judgment on all parties as required by the Texas Rules of Civil Procedure. 
Glazener contends that service on him was defective because the signature of the recipient of service
was illegible. By six other issues, appellants contend that Jansing's pleadings and proof are
inadequate to support the judgment rendered. We will affirm the judgment.


BACKGROUND


 The following factual summary is taken from the record submitted in the default-judgment proceedings. This summary is included to present a context for the discussion in this
opinion, but should not be construed as binding other parties in related pending cases.

 John Rader operated a stock day-trading company called Bayside Trading. (1) Jansing
loaned money to Rader as evidenced by a $50,000 promissory note made in July 1999 and a $58,000
promissory note made in January 2000; the latter note comprised $8,000 of interest on the first note
and an additional loan of $50,000. Rader represented that Jansing's funds would be deposited into
a margin control account used to make margin calls for the day-traders. He represented that this was
a low-risk investment, and the notes guaranteed an interest rate of between nine and eighteen percent. 
The first note also indicated that Jansing would receive a ten-percent ownership interest in the
company; this page of the agreement in the record is signed only by Jansing. Although Rader was
not able to repay the first note when it came due in December 1999, he persuaded Jansing that the
money was safe and earning interest, and that additional money would be treated similarly. In the
second note, Rader represented that Jansing would receive an additional fifteen-percent ownership
interest in the company making his total ownership share 25 percent of the company; this page of
the agreement in the record is signed only by Rader.

 Jansing alleged that Rader held himself out as the owner of the company with full
authority to execute notes, make contracts, and transfer stock. Although Rader managed the daily
business of the company--such as recruiting, training, and clearing traders--he never owned any
shares of stock in Bayside Trading, Inc. Instead, appellants Glazener and Slagle were the only
shareholders. Jansing alleged that appellants relied on Rader to manage the company, knew that he
was holding himself out as the owner, and allowed him to conduct business as if he were the only
shareholder.

 When Rader defaulted on the notes, Jansing sued Rader, individually and doing
business as Bayside Trading, and Bayside Trading, Inc. Jansing obtained a partial summary
judgment in March 2002 against Rader (2) for $131,613.75 plus $5,000 in attorney's fees. After
learning of the ownership structure of Bayside Trading, Inc., Jansing amended his petition in May
2002 to add Glazener and Slagle, each individually and doing business as Bayside Trading (but not
as a corporation). Service of citation on appellants was returned on June 18, 2002.

 Jansing filed a motion for default judgment against Glazener and Slagle on July 18,
2002. The district court granted judgment against appellants in their individual capacities that same
day. The court found that appellants committed fraud because (1) they were actually aware that
Rader was making false representations of material facts to induce Jansing to enter a contract,
(2) Jansing relied on the representations, (3) the representations were material and false and made
with actual awareness of their falsity, (4) the representations were made with the intent that Jansing
rely on them, (5) Jansing did rely on them, (6) appellants' conduct proximately caused actual
damages to Jansing, and (7) appellants violated the Penal Code by securing execution of contract
documents by deception. The court awarded Jansing $100,000 in actual damages against appellants
jointly and severally, $150,000 in punitive damages against each appellant, and $8,000 in attorney's
fees from appellants jointly and severally, plus additional fees in the event of appeal. The judgment
does not mention Jansing's claims on the notes and allegations of negligence, but the July 29, 2002
order severing Jansing's claims against appellants from the remaining claims states that the judgment
against appellants disposes of all issues between them and Jansing and therefore is final. 

 Appellants filed their notice of restricted appeal on December 16, 2002.


DISCUSSION


 This is a restricted appeal. See Tex. R. App. P. 30. A restricted appeal replaces the
writ of error practice. See id. Review by restricted appeal affords the appellant a review of the entire
case, just as in an ordinary appeal, with the restriction that any error must appear on the face of the
record. Conseco Fin. Servicing v. Klein Indep. Sch. Dist., 78 S.W.3d 666, 670 (Tex. App.--Houston
[14th Dist.] 2002, no pet.); Norman Communications v. Texas Eastman Co., 955 S.W.2d 269, 270
(Tex. 1997) (setting out writ of error standards). The face of the record for purposes of a restricted
appeal consists of all the papers on file before the judgment as well as the reporter's record. See
Conseco, 78 S.W.3d at 670; Norman, 955 S.W.2d at 270.

 Appellants present four procedural and four substantive issues. The procedural
complaints concern the sufficiency of service, the necessary recipients of the motion for default
judgment, and the necessity of a hearing on damages. The substantive complaints include whether
the statutes allegedly apply to this case, whether mere awareness of misrepresentations is sufficient
to prove common-law and statutory fraud, and whether conclusory statements are sufficient evidence
to support a fraud judgment.


Service of process

 Glazener contends that the return of service on him is insufficient because the process
server's signature is illegible. There are no presumptions in favor of a valid issuance, service, and
return of citation in the face of an attack on a default judgment by restricted appeal. Primate Constr.,
Inc. v. Silver, 884 S.W.2d 151, 152 (Tex. 1994); TAC Ams., Inc. v. Boothe, 94 S.W.3d 315, 319
(Tex. App.--Austin 2002, no pet.). For a default judgment to withstand direct attack, the record
must show strict compliance with the Texas Rules of Civil Procedure governing citation and return
of service. Boothe, 94 S.W.3d at 319. The rule at issue provides, in relevant part, as follows:


The return of the officer or authorized person executing the citation shall be endorsed
on or attached to the same; it shall state when the citation was served and the manner
of service and be signed by the officer officially or by the authorized person. The
return of citation by an authorized person shall be verified.



Tex. R. Civ. P. 107. Glazener argues that the illegibility of the signature means that the return of
service neither shows that it was signed by an officer nor verifies the authority of any non-officer as
required. See id.

 We conclude, however, that the fact that the return was signed and a mark made
indicating that the server was a constable satisfies the requirements of the rule. See id. There is no
basis on the face of the record to believe that the person who signed the return was not a constable,
nor is there any requirement in the rule regarding legibility of the signature.


Service of motion

 Appellants complain that the motion for default judgment was not served on all
parties and therefore is deficient. See Tex. R. Civ. P. 21 ("Every pleading, plea, motion or
application to the court . . . shall be served on all other parties . . . ."). Appellants cite an opinion
reversing a default judgment taken against an obligor because the surety, who was not the target of
the motion, was not served with notice. See Trinity Universal Ins. Co. v. Briarcrest Country Club
Corp., 831 S.W.2d 453 (Tex. App.--Houston [14th Dist.] 1992, writ denied). The court held that
Rule 21 means what it says--that motions must be served on all parties. Id. at 455-56. The court's
opinion rests on the harm to the appellant surety caused by the failure to serve the motion on the
surety; when the obligor defaulted, the surety was obligated to pay without having the opportunity
to defend on the merits as a result of the lack of notice. Id. 

 The reasoning in the Trinity opinion does not apply to the facts of this case. 
Appellants here are not seeking to enforce their own right to notice. Indeed, parties served with
citation and a petition are not entitled to additional notice of the intention to take a default judgment
against them. See Continental Carbon Co. v. Sea-Land Serv., Inc., 27 S.W.3d 184, 188-89 (Tex.
App.--Dallas 2000, pet. denied). Appellants present no basis on which they can enforce the rights
of others to receive notice. Further, appellants do not make the necessary showing that they were
harmed by the failure to serve others with notice. See Tex. R. App. P. 44.1. Even if appellants could
enforce the rights of others to notice, there is no showing that the others were harmed by the lack of
notice. Unlike the surety in Trinity, who was liable once the obligor defaulted, there is no indication
that appellants' default imposes any liability on others.

Sufficiency of pleadings

 Appellants raise several issues on which they assert that Jansing's pleadings are
insufficient. They contend that Jansing's allegations are conclusory, that appellants cannot be held
liable for Jansing's losses under either common-law or statutory fraud theories if they were simply
aware of misrepresentations made by Rader, and that a statutory fraud claim cannot stand without
an allegation that the transaction involved stock or real estate.

 Even if Jansing's allegations are conclusory, they can support a default judgment. 
A default judgment must be based on the pleadings. See Stoner v. Thompson, 578 S.W.2d 679,
684-85 (Tex. 1979). Plaintiffs must use plain and concise language in asserting a cause of action in
their petitions. Tex. R. Civ. P. 45(b). The fact that an allegation is a legal conclusion, however, is
not grounds for objection when the allegations as a whole give fair notice to the opponent of the
claims made. Id.; Paramount Pipe & Supply Co. v. Muhr, 749 S.W.2d 491, 494 (Tex. 1988); see
also Westcliffe, Inc. v. Bear Creek Const., Ltd., 105 S.W.3d 286, 291-92 (Tex. App.--Dallas 2003,
no pet.). A petition is sufficient if a cause of action may reasonably be inferred from what is
specifically stated in the petition, even if an element of the action is not specifically alleged. 
Wal-Mart Stores, Inc. v. Itz, 21 S.W.3d 456, 470-71 (Tex. App.--Austin 2000, pet. denied); Spiers
v. Maples, 970 S.W.2d 166, 169 (Tex. App.--Fort Worth 1998, no pet.). 

 The elements of a cause of action for fraud are that (1) a material representation was
made; (2) the representation was false; (3) when the representation was made, the speaker knew it
was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the
speaker made the representation with the intent that the other party should act upon it; (5) the party
acted in reliance on the representation; and (6) the party thereby suffered injury. In re FirstMerit
Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001). The elements of statutory fraud with respect to a
corporate stock transaction are similar. See Tex. Bus. & Com. Code Ann. § 27.01(d) (West 2002). (3)


 Because the only person Jansing alleges made representations to him is Rader,
Jansing's claim is that appellants are responsible for Rader's statements. One seeking to charge a
principal through the apparent authority of its agent must establish conduct by the principal that
would lead a reasonably prudent person to believe that the agent has the authority that it purports to
exercise. NationsBank, N.A. v. Dilling, 922 S.W.2d 950, 953 (Tex. 1996). The principal must have
affirmatively held out the agent as possessing the authority or must have knowingly and voluntarily
permitted the agent to act in an unauthorized manner. Id.

 Contrary to appellants' assertion, Jansing did not allege that appellants were merely
aware of Rader's misrepresentations. He alleged, "At all times, Glazener and Slagle knew that Rader
was holding himself out as the owner of Bayside and they allowed Rader to conduct business for
Bayside as if he were the only shareholder by cloaking him with full authorization or ratification of
his actions." Jansing thus alleged that appellants not only were aware of Rader's misrepresentations
but approved of them and made them their own.

 Jansing also alleged that stock was involved in the transaction sufficiently to bring
his claims within the scope of the statutory fraud provisions. See Tex. Bus. & Com. Code Ann.
§ 27.01. He alleged that Rader represented that he wholly owned Bayside (4) and that, in exchange for
Jansing loaning $100,000, one-quarter of the ownership would be transferred to Jansing. Jansing
alleged that Rader made these representations under authority from appellants and intending to
induce Jansing to loan the money. Jansing loaned the money, but was not repaid. Jansing's petition
indicates that the ownership interest that was to be transferred to him was in the form of shares of
stock. Although Jansing did not use the term "stock" in his petition, he alleged that "Glazener and
Slagle were legally the only shareholders of the corporation of Bayside." Section 27.01 does not
define "stock," but the terms "shares" and "stock" seem to be related or interchangeable. See Tex.
Rev. Civ. Stat. Ann. art. 1302-1.02(A)(3), (6) (West 2003). Jansing thus alleged that appellants used
fraud to induce him to participate in a transaction involving stock; it is thus within the statutory fraud
provision. See Tex. Bus. & Com. Code Ann. § 27.01.

 Jansing's allegations are also sufficient to support the fraud finding. While many of
the statements he alleges Rader made regarding the function of Bayside's business are not shown to
be false, some crucial ones are. The most critical to Jansing appears to have been Rader's assertion
that he was the sole owner of the business; instead, appellants--a roofer and a dentist, not licensed
security dealers--owned the day-trading company, and Rader had no ownership stake in the
business. Jansing alleged that he did not know the representation about ownership was false, that
he did rely on it when entering the loan transactions, and that he lost the loaned money because of
that reliance. Jansing alleged that appellants knew of this representation, knew it was false, and
nevertheless did not correct the misrepresentation.


Damages

 Appellants contend that the damage awards cannot stand because the court failed to
hold evidentiary hearings on either the actual or exemplary damages. They also complain that the
statutory fraud provision does not apply.

 Appellants contend that the court erred by failing to hold evidentiary hearings in order
to assess unliquidated actual damages. No default-judgment hearing is necessary if the claim is
liquidated and proved by an instrument in writing. See Tex. R. Civ. P. 241. If the claim is
unliquidated or not proved by a written instrument, the court must hold a hearing. See id. 243. 
Jansing complains that the fraud induced him to provide the loans, which were not repaid. His actual
damages are based on the notes; they are thus proved by a written instrument and are liquidated. 
Further, although a hearing is required on unliquidated damages, the supreme court has held that
affidavits--even those containing unobjected-to hearsay--satisfy the requirement that the court hear
evidence and can support an award of unliquidated damages in a default judgment. See id.; Texas
Commerce Bank, Nat'l Ass'n v. New, 3 S.W.3d 515, 516-17 (Tex. 1999). 

 Appellants argue that they cannot be held liable for actual damages under the fraud
statute because it expressly provides only for exemplary damages against a person who knows of,
fails to correct, and benefits from another's misrepresentation. See Tex. Bus. & Com. Code Ann.
§ 27.01(d). The statute, however, expressly states that a person who knows of the other's
misrepresentation commits the fraud described in subsection (a). See id. § 27.01(a). The statute
provides that a person who commits the fraud described in subsection (a) is liable for actual
damages. See id. § 27.01(b). Thus, a person who knows of another's misrepresentation can be held
liable for actual and exemplary damages under the statute.

 Jansing concedes that the exemplary damages were unliquidated. Affidavit testimony
satisfies the requirement that the court hear evidence of unliquidated damages with regard to
exemplary damages as well. See New, 3 S.W.3d at 516-17. Where claims of legal or factual
sufficiency concern damages in a default judgment, the appellant is entitled to review of the evidence
produced. Transport Concepts, Inc. v. Reeves, 748 S.W.2d 302, 304 (Tex. App.--Dallas 1988, no
writ) (citing Rogers v. Rogers, 561 S.W.2d 172, 173-74 (Tex. 1978)). To sustain an award of
exemplary damages in a default judgment, appellees must both plead knowing conduct and present
evidence that the extent of appellant's knowledge warrants additional damages. See Sunrizon
Homes, Inc. v. Fuller, 747 S.W.2d 530, 534 (Tex. App.--San Antonio 1988, writ denied) (punitive
damages not admitted by default in DTPA case). In addition, an exemplary damages award must
be reasonably proportioned to actual damages. Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910
(Tex. 1981). The nature of Jansing's claims required him to prove by clear and convincing evidence
that the harm for which he seeks exemplary damages resulted from fraud or malice on the part of the
defendants. See Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (West 1997). The trial court must
consider several factors to determine whether an award of exemplary damages is reasonable, such
as (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability
of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to
which such conduct offends a public sense of justice and propriety. Kraus, 616 S.W.2d at 910. We
may reverse an exemplary damage award only if the evidence supporting the award is so weak or so
against the great weight and preponderance of the evidence as to be manifestly unjust. Lubbock
County v. Strube, 953 S.W.2d 847, 860 (Tex. App.--Austin 1997, pet. denied). 

 There is no additional evidence that is applicable to the exemplary damage award. 
The previously discussed evidence shows that the nature of the wrong is appellants' knowing
acceptance of benefits through complicity in Rader's deceit. Jansing does not allege anything further
than that appellants authorized or ratified Rader's misrepresentations of the nature of their business
and his procurement of loans based on those misrepresentations, thus benefitting their business. 
There is no showing that Jansing was anything other than a competent, if trusting, individual. The
aggregate punitive damage award against appellants is $300,000--three times the principal amount
of actual damages awarded. However, the $150,000 award against each appellant is less than twice
the $100,000 in actual damages awarded against appellants jointly and severally. The amount is
within the statutory limits. See Tex. Civ. Prac. & Rem. Code Ann. § 41.008(b), (c) (West Supp.
2003).

 We cannot conclude that this evidence is so weak or against the great weight and
preponderance of evidence as to be manifestly unjust.


CONCLUSION


 Having resolved all issues presented in favor of the judgment, we affirm.



 

 Mack Kidd, Justice

Before Chief Justice Law, Justices Kidd and Patterson

Affirmed

Filed: September 25, 2003
1. Appellants urge that the distinction between Bayside Trading and Bayside Trading, Inc.
is crucial, but the allegations that they admitted by defaulting do not make that distinction. Under
the petition, Rader alleged that he wholly owned "Bayside," which is the term Jansing uses for the
corporation owned by appellants.
2. The judgment does not make clear if, in addition to judgment being rendered against Rader
in his individual capacity, it is also rendered against him doing business as "Bayside Trading." 
Judgment is not rendered against "Bayside Trading, Inc."
3. The statute defining fraud in real-estate or corporate-stock transactions provides as follows:



 Fraud in a transaction involving real estate or stock in a corporation or joint
stock company consists of a


 


 
 false representation of a past or existing material fact, when the false
representation is
 


 


 
 
 made to a person for the purpose of inducing that person to enter
into a contract; and
 
 


 


 
 
 relied on by that person in entering into that contract; or
 
 


 


 
 false promise to do an act, when the false promise is
 


 


 
 
 material;
 
 


 


 
 
 made with the intention of not fulfilling it;

 made to a person for the purpose of inducing that person to enter
into a contract; and
 
 


 

 (D) relied on by that person in entering into that contract.

 


 A person who makes a false representation or false promise commits the
fraud described in Subsection (a) of this section and is liable to the person
defrauded for actual damages.

 A person who makes a false representation or false promise with actual
awareness of the falsity thereof commits the fraud described in Subsection
(a) of this section and is liable to the person defrauded for exemplary
damages. Actual awareness may be inferred where objective manifestations
indicate that a person acted with actual awareness.



 


 A person who (1) has actual awareness of the falsity of a representation or promise
made by another person and (2) fails to disclose the falsity of the representation or
promise to the person defrauded, and (3) benefits from the false representation or
promise commits the fraud described in Subsection (a) of this section and is liable to
the person defrauded for exemplary damages. Actual awareness may be inferred
where objective manifestations indicate that a person acted with actual awareness.



Tex. Bus. & Com. Code Ann. § 27.01 (West 2002).
4. As discussed in footnote one, the allegations appellants admitted by defaulting do not make
a distinction between "Bayside" and "Bayside Trading, Inc."