# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00796-CV

**Fred Glazener and James Slagle, Appellants**

**v.**

**John M. Jansing, Jr., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. GN202629, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Fred Glazener and James Slagle appeal from the default judgment rendered against them and in favor of John M. Jansing, Jr. Appellants complain that Jansing failed to serve his motion for default judgment on all parties as required by the Texas Rules of Civil Procedure. Glazener contends that service on him was defective because the signature of the recipient of service was illegible. By six other issues, appellants contend that Jansing's pleadings and proof are inadequate to support the judgment rendered. We will affirm the judgment.

## BACKGROUND

The following factual summary is taken from the record submitted in the default-judgment proceedings. This summary is included to present a context for the discussion in this opinion, but should not be construed as binding other parties in related pending cases.

John Rader operated a stock day-trading company called Bayside Trading.[1] Jansing loaned money to Rader as evidenced by a $50,000 promissory note made in July 1999 and a $58,000 promissory note made in January 2000; the latter note comprised $8,000 of interest on the first note and an additional loan of $50,000. Rader represented that Jansing's funds would be deposited into a margin control account used to make margin calls for the day-traders. He represented that this was a low-risk investment, and the notes guaranteed an interest rate of between nine and eighteen percent. The first note also indicated that Jansing would receive a ten-percent ownership interest in the company; this page of the agreement in the record is signed only by Jansing. Although Rader was not able to repay the first note when it came due in December 1999, he persuaded Jansing that the money was safe and earning interest, and that additional money would be treated similarly. In the second note, Rader represented that Jansing would receive an additional fifteen-percent ownership interest in the company making his total ownership share 25 percent of the company; this page of the agreement in the record is signed only by Rader.

Jansing alleged that Rader held himself out as the owner of the company with full authority to execute notes, make contracts, and transfer stock. Although Rader managed the daily business of the company—such as recruiting, training, and clearing traders—he never owned any shares of stock in Bayside Trading, Inc. Instead, appellants Glazener and Slagle were the only

---

[1] Appellants urge that the distinction between Bayside Trading and Bayside Trading, Inc. is crucial, but the allegations that they admitted by defaulting do not make that distinction. Under the petition, Rader alleged that he wholly owned "Bayside," which is the term Jansing uses for the corporation owned by appellants.

shareholders.  Jansing alleged that appellants relied on Rader to manage the company, knew that he was holding himself out as the owner, and allowed him to conduct business as if he were the only shareholder.

When Rader defaulted on the notes, Jansing sued Rader, individually and doing business as Bayside Trading, and Bayside Trading, Inc.  Jansing obtained a partial summary judgment in March 2002 against Rader[2] for $131,613.75 plus $5,000 in attorney's fees.  After learning of the ownership structure of Bayside Trading, Inc., Jansing amended his petition in May 2002 to add Glazener and Slagle, each individually and doing business as Bayside Trading (but not as a corporation).  Service of citation on appellants was returned on June 18, 2002.

Jansing filed a motion for default judgment against Glazener and Slagle on July 18, 2002.  The district court granted judgment against appellants in their individual capacities that same day.  The court found that appellants committed fraud because (1) they were actually aware that Rader was making false representations of material facts to induce Jansing to enter a contract, (2) Jansing relied on the representations, (3) the representations were material and false and made with actual awareness of their falsity, (4) the representations were made with the intent that Jansing rely on them, (5) Jansing did rely on them, (6) appellants' conduct proximately caused actual damages to Jansing, and (7) appellants violated the Penal Code by securing execution of contract

---

[2] The judgment does not make clear if, in addition to judgment being rendered against Rader in his individual capacity, it is also rendered against him doing business as "Bayside Trading." Judgment is not rendered against "Bayside Trading, Inc."

3

documents by deception. The court awarded Jansing $100,000 in actual damages against appellants jointly and severally, $150,000 in punitive damages against each appellant, and $8,000 in attorney's fees from appellants jointly and severally, plus additional fees in the event of appeal. The judgment does not mention Jansing's claims on the notes and allegations of negligence, but the July 29, 2002 order severing Jansing's claims against appellants from the remaining claims states that the judgment against appellants disposes of all issues between them and Jansing and therefore is final.

Appellants filed their notice of restricted appeal on December 16, 2002.

## DISCUSSION

This is a restricted appeal. *See* Tex. R. App. P. 30. A restricted appeal replaces the writ of error practice. *See id*. Review by restricted appeal affords the appellant a review of the entire case, just as in an ordinary appeal, with the restriction that any error must appear on the face of the record. *Conseco Fin. Servicing v. Klein Indep. Sch. Dist.*, 78 S.W.3d 666, 670 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Norman Communications v. Texas Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (setting out writ of error standards). The face of the record for purposes of a restricted appeal consists of all the papers on file before the judgment as well as the reporter's record. *See Conseco*, 78 S.W.3d at 670; *Norman*, 955 S.W.2d at 270.

Appellants present four procedural and four substantive issues. The procedural complaints concern the sufficiency of service, the necessary recipients of the motion for default judgment, and the necessity of a hearing on damages. The substantive complaints include whether the statutes allegedly apply to this case, whether mere awareness of misrepresentations is sufficient

4

to prove common-law and statutory fraud, and whether conclusory statements are sufficient evidence to support a fraud judgment.

**Service of process**

Glazener contends that the return of service on him is insufficient because the process server's signature is illegible. There are no presumptions in favor of a valid issuance, service, and return of citation in the face of an attack on a default judgment by restricted appeal. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994); *TAC Ams., Inc. v. Boothe*, 94 S.W.3d 315, 319 (Tex. App.—Austin 2002, no pet.). For a default judgment to withstand direct attack, the record must show strict compliance with the Texas Rules of Civil Procedure governing citation and return of service. *Boothe*, 94 S.W.3d at 319. The rule at issue provides, in relevant part, as follows:

> The return of the officer or authorized person executing the citation shall be endorsed on or attached to the same; it shall state when the citation was served and the manner of service and be signed by the officer officially or by the authorized person. The return of citation by an authorized person shall be verified.

Tex. R. Civ. P. 107. Glazener argues that the illegibility of the signature means that the return of service neither shows that it was signed by an officer nor verifies the authority of any non-officer as required. *See id*.

We conclude, however, that the fact that the return was signed and a mark made indicating that the server was a constable satisfies the requirements of the rule. *See id*. There is no basis on the face of the record to believe that the person who signed the return was not a constable, nor is there any requirement in the rule regarding legibility of the signature.

5

**Service of motion**

Appellants complain that the motion for default judgment was not served on all parties and therefore is deficient. *See* Tex. R. Civ. P. 21 ("Every pleading, plea, motion or application to the court . . . shall be served on all other parties . . . ."). Appellants cite an opinion reversing a default judgment taken against an obligor because the surety, who was not the target of the motion, was not served with notice. *See Trinity Universal Ins. Co. v. Briarcrest Country Club Corp.*, 831 S.W.2d 453 (Tex. App.—Houston [14th Dist.] 1992, writ denied). The court held that Rule 21 means what it says—that motions must be served on all parties. *Id.* at 455-56. The court's opinion rests on the harm to the appellant surety caused by the failure to serve the motion on the surety; when the obligor defaulted, the surety was obligated to pay without having the opportunity to defend on the merits as a result of the lack of notice. *Id.*

The reasoning in the *Trinity* opinion does not apply to the facts of this case. Appellants here are not seeking to enforce their own right to notice. Indeed, parties served with citation and a petition are not entitled to additional notice of the intention to take a default judgment against them. *See Continental Carbon Co. v. Sea-Land Serv., Inc.*, 27 S.W.3d 184, 188-89 (Tex. App.—Dallas 2000, pet. denied). Appellants present no basis on which they can enforce the rights of others to receive notice. Further, appellants do not make the necessary showing that they were harmed by the failure to serve others with notice. *See* Tex. R. App. P. 44.1. Even if appellants could enforce the rights of others to notice, there is no showing that the others were harmed by the lack of notice. Unlike the surety in *Trinity*, who was liable once the obligor defaulted, there is no indication that appellants' default imposes any liability on others.

**Sufficiency of pleadings**

Appellants raise several issues on which they assert that Jansing's pleadings are insufficient. They contend that Jansing's allegations are conclusory, that appellants cannot be held liable for Jansing's losses under either common-law or statutory fraud theories if they were simply aware of misrepresentations made by Rader, and that a statutory fraud claim cannot stand without an allegation that the transaction involved stock or real estate.

Even if Jansing's allegations are conclusory, they can support a default judgment. A default judgment must be based on the pleadings. *See Stoner v. Thompson*, 578 S.W.2d 679, 684-85 (Tex. 1979). Plaintiffs must use plain and concise language in asserting a cause of action in their petitions. Tex. R. Civ. P. 45(b). The fact that an allegation is a legal conclusion, however, is not grounds for objection when the allegations as a whole give fair notice to the opponent of the claims made. *Id.*; *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494 (Tex. 1988); *see also Westcliffe, Inc. v. Bear Creek Const., Ltd.*, 105 S.W.3d 286, 291-92 (Tex. App.—Dallas 2003, no pet.). A petition is sufficient if a cause of action may reasonably be inferred from what is specifically stated in the petition, even if an element of the action is not specifically alleged. *Wal-Mart Stores, Inc. v. Itz*, 21 S.W.3d 456, 470-71 (Tex. App.—Austin 2000, pet. denied); *Spiers v. Maples*, 970 S.W.2d 166, 169 (Tex. App.—Fort Worth 1998, no pet.).

The elements of a cause of action for fraud are that (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party

7

acted in reliance on the representation; and (6) the party thereby suffered injury.  *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).  The elements of statutory fraud with respect to a corporate stock transaction are similar.  *See* Tex. Bus. & Com. Code Ann. § 27.01(d) (West 2002).[3]

---

[3] The statute defining fraud in real-estate or corporate-stock transactions provides as follows:

    (a)  Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a

        (1)  false representation of a past or existing material fact, when the false representation is

            (A)  made to a person for the purpose of inducing that person to enter into a contract; and

            (B)  relied on by that person in entering into that contract; or

        (2)  false promise to do an act, when the false promise is

            (A)  material;

            (B)  made with the intention of not fulfilling it;

            (C)  made to a person for the purpose of inducing that person to enter into a contract; and

            (D) relied on by that person in entering into that contract.

    (b)  A person who makes a false representation or false promise commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for actual damages.

    (c)  A person who makes a false representation or false promise with actual awareness of the falsity thereof commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for exemplary damages.  Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

Because the only person Jansing alleges made representations to him is Rader, Jansing's claim is that appellants are responsible for Rader's statements. One seeking to charge a principal through the apparent authority of its agent must establish conduct by the principal that would lead a reasonably prudent person to believe that the agent has the authority that it purports to exercise. *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 953 (Tex. 1996). The principal must have affirmatively held out the agent as possessing the authority or must have knowingly and voluntarily permitted the agent to act in an unauthorized manner. *Id.*

Contrary to appellants' assertion, Jansing did not allege that appellants were merely aware of Rader's misrepresentations. He alleged, "At all times, Glazener and Slagle knew that Rader was holding himself out as the owner of Bayside and they allowed Rader to conduct business for Bayside as if he were the only shareholder by cloaking him with full authorization or ratification of his actions." Jansing thus alleged that appellants not only were aware of Rader's misrepresentations but approved of them and made them their own.

Jansing also alleged that stock was involved in the transaction sufficiently to bring his claims within the scope of the statutory fraud provisions. *See* Tex. Bus. & Com. Code Ann.

---

(d)  A person who (1) has actual awareness of the falsity of a representation or promise made by another person and (2) fails to disclose the falsity of the representation or promise to the person defrauded, and (3) benefits from the false representation or promise commits the fraud described in Subsection (a) of this section and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

Tex. Bus. & Com. Code Ann. § 27.01 (West 2002).

9

§ 27.01. He alleged that Rader represented that he wholly owned Bayside[4] and that, in exchange for Jansing loaning $100,000, one-quarter of the ownership would be transferred to Jansing. Jansing alleged that Rader made these representations under authority from appellants and intending to induce Jansing to loan the money. Jansing loaned the money, but was not repaid. Jansing's petition indicates that the ownership interest that was to be transferred to him was in the form of shares of stock. Although Jansing did not use the term "stock" in his petition, he alleged that "Glazener and Slagle were legally the only shareholders of the corporation of Bayside." Section 27.01 does not define "stock," but the terms "shares" and "stock" seem to be related or interchangeable. *See* Tex. Rev. Civ. Stat. Ann. art. 1302-1.02(A)(3), (6) (West 2003). Jansing thus alleged that appellants used fraud to induce him to participate in a transaction involving stock; it is thus within the statutory fraud provision. *See* Tex. Bus. & Com. Code Ann. § 27.01.

Jansing's allegations are also sufficient to support the fraud finding. While many of the statements he alleges Rader made regarding the function of Bayside's business are not shown to be false, some crucial ones are. The most critical to Jansing appears to have been Rader's assertion that he was the sole owner of the business; instead, appellants—a roofer and a dentist, not licensed security dealers—owned the day-trading company, and Rader had no ownership stake in the business. Jansing alleged that he did not know the representation about ownership was false, that

---

[4] As discussed in footnote one, the allegations appellants admitted by defaulting do not make a distinction between "Bayside" and "Bayside Trading, Inc."

he did rely on it when entering the loan transactions, and that he lost the loaned money because of that reliance. Jansing alleged that appellants knew of this representation, knew it was false, and nevertheless did not correct the misrepresentation.

**Damages**

Appellants contend that the damage awards cannot stand because the court failed to hold evidentiary hearings on either the actual or exemplary damages. They also complain that the statutory fraud provision does not apply.

Appellants contend that the court erred by failing to hold evidentiary hearings in order to assess unliquidated actual damages. No default-judgment hearing is necessary if the claim is liquidated and proved by an instrument in writing. *See* Tex. R. Civ. P. 241. If the claim is unliquidated or not proved by a written instrument, the court must hold a hearing. *See id.* 243. Jansing complains that the fraud induced him to provide the loans, which were not repaid. His actual damages are based on the notes; they are thus proved by a written instrument and are liquidated. Further, although a hearing is required on unliquidated damages, the supreme court has held that affidavits—even those containing unobjected-to hearsay—satisfy the requirement that the court hear evidence and can support an award of unliquidated damages in a default judgment. *See id.*; *Texas Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 516-17 (Tex. 1999).

Appellants argue that they cannot be held liable for actual damages under the fraud statute because it expressly provides only for exemplary damages against a person who knows of, fails to correct, and benefits from another's misrepresentation. *See* Tex. Bus. & Com. Code Ann.

11

§ 27.01(d). The statute, however, expressly states that a person who knows of the other's misrepresentation commits the fraud described in subsection (a). *See id*. § 27.01(a). The statute provides that a person who commits the fraud described in subsection (a) is liable for actual damages. *See id*. § 27.01(b). Thus, a person who knows of another's misrepresentation can be held liable for actual and exemplary damages under the statute.

Jansing concedes that the exemplary damages were unliquidated. Affidavit testimony satisfies the requirement that the court hear evidence of unliquidated damages with regard to exemplary damages as well. *See New*, 3 S.W.3d at 516-17. Where claims of legal or factual sufficiency concern damages in a default judgment, the appellant is entitled to review of the evidence produced. *Transport Concepts, Inc. v. Reeves*, 748 S.W.2d 302, 304 (Tex. App.—Dallas 1988, no writ) (citing *Rogers v. Rogers*, 561 S.W.2d 172, 173-74 (Tex. 1978)). To sustain an award of exemplary damages in a default judgment, appellees must both plead knowing conduct and present evidence that the extent of appellant's knowledge warrants additional damages. *See Sunrizon Homes, Inc. v. Fuller*, 747 S.W.2d 530, 534 (Tex. App.—San Antonio 1988, writ denied) (punitive damages not admitted by default in DTPA case). In addition, an exemplary damages award must be reasonably proportioned to actual damages. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). The nature of Jansing's claims required him to prove by clear and convincing evidence that the harm for which he seeks exemplary damages resulted from fraud or malice on the part of the defendants. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (West 1997). The trial court must consider several factors to determine whether an award of exemplary damages is reasonable, such

12

as (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety. *Kraus*, 616 S.W.2d at 910. We may reverse an exemplary damage award only if the evidence supporting the award is so weak or so against the great weight and preponderance of the evidence as to be manifestly unjust. *Lubbock County v. Strube*, 953 S.W.2d 847, 860 (Tex. App.—Austin 1997, pet. denied).

There is no additional evidence that is applicable to the exemplary damage award. The previously discussed evidence shows that the nature of the wrong is appellants' knowing acceptance of benefits through complicity in Rader's deceit. Jansing does not allege anything further than that appellants authorized or ratified Rader's misrepresentations of the nature of their business and his procurement of loans based on those misrepresentations, thus benefitting their business. There is no showing that Jansing was anything other than a competent, if trusting, individual. The aggregate punitive damage award against appellants is $300,000—three times the principal amount of actual damages awarded. However, the $150,000 award against each appellant is less than twice the $100,000 in actual damages awarded against appellants jointly and severally. The amount is within the statutory limits. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.008(b), (c) (West Supp. 2003).

We cannot conclude that this evidence is so weak or against the great weight and preponderance of evidence as to be manifestly unjust.

## CONCLUSION

Having resolved all issues presented in favor of the judgment, we affirm.

_____

Mack Kidd, Justice

Before Chief Justice Law, Justices Kidd and Patterson

Affirmed

Filed:   September 25, 2003