# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-02-00222-CV

---

**TAC Americas, Inc. f/k/a CSI Control Systems International, Inc., Appellant**

**v.**

**Edward Boothe; Wanda R. Boothe; Jeremy Boothe; Zachary Boothe; and Emily Boothe, Appellees**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. GN200124, HONORABLE PETER M. LOWRY, JUDGE PRESIDING

---

This is an appeal from a no-answer default judgment in favor of appellees Edward, Wanda, Jeremy, Zachary, and Emily Boothe (together the ΑBoothes≅) and against appellant TAC Americas, Inc., formerly known as CSI Control Systems International, Inc., in a negligence suit. On appeal, TAC Americas asserts that: (1) the district-court judgment must be reversed because TAC Americas, through no fault of its own, is unable to procure a reporter=s record of the district-court proceedings; (2) errors in the issuance, service, and return of citation are evident on the face of the record and warrant reversal of the default judgment entered below; and (3) the record does not affirmatively show strict compliance with the Texas Rules of Civil Procedure relating to the manner and mode of service and return of citation. We will reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Edward Boothe was employed as an electrician by the Round Rock Independent School District. While Boothe was working on an electrical panel at Gattis Elementary School, his pliers came into contact with the panel=s busbars. A busbar is an electrical conductor that provides a common connection between several circuits. The resulting electrical fire severely injured Boothe, leaving him with burns on his hands, face, arms, wrist, and neck.

Boothe and his family filed suit alleging negligence against Baird & Hunter Electric, Silverton Construction Company, and Square D, each a contractor or subcontractor responsible for the construction of the school or the manufacture or installation of the school=s electrical system. The Boothes later amended their petition to add TAC Americas as a defendant, alleging that TAC Americas, as the installer of the electrical system, was negligent in failing to properly inspect and maintain the system, and, as a result of such negligence, Edward Boothe was seriously injured.

The Travis County district clerk issued a citation to ATAC AMERICAS BY DELIVERING TO ITS REGISTERED AGENT PRENTICE HALL CORPORATION SYSTEM 800 BRAZOS AUSTIN TEXAS 78701.@ The AOfficer=s Return of Service@ reflects that the amended petition came into the process server=s possession Aon 11/19/01 Time: 12:23:26.@ The return further states that the process server completed delivery Aon 11/19/01 Time: 12:15:00@ and that service was executed at A800 Brazos St. Austin TX 78701@ to ATac Americas, By Delivering To Its Registered Agent Prentice Hall Corporation System.@ Finally, the return reflects the following: A_✓ PERSONALLY delivering the document(s) to the person above.@

Approximately two months after the district clerk filed the return, the Boothes moved for a default judgment against TAC Americas. On January 14, 2002, the district court signed an interlocutory default judgment against TAC Americas, which had neither answered nor appeared. In April 2002, TAC Americas filed a notice of restricted appeal. *See* Tex. R. App. P. 30.

## DISCUSSION

### *Restricted Appeal*

A restricted appeal is available for the limited purpose of providing a party that did not participate at trial with the opportunity to correct an erroneous judgment. *In re E.K.N.*, 24 S.W.3d 586, 590 (Tex. App.CFort Worth 2000, no pet.) (citing Tex. R. App. P. 30). For a restricted appeal to be successful: (1) a notice of restricted appeal must be filed within six months after judgment is signed; (2) by a party to the lawsuit; (3) who did not participate in the hearing that resulted in the judgment complained of; (4) who did not file a timely post-judgment motion or request for findings of fact and conclusions of law; and (5) error must be apparent on the face of the record. Tex. R. App. P. 30; *Stubbs v. Stubbs*, 685 S.W.2d 643, 644 (Tex. 1985). The parties join issue over the final elementCwhether error exists on the face of the record that would require reversal of the default judgment. The face of the record, for purposes of restricted appeal, consists of all papers on file in the appeal. *Norman Communications v. Texas Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (citing *DSC Fin. Corp. v. Moffitt*, 815 S.W.2d 551, 551(Tex. 1991)).

### *Citation & Return of Service*

3

By its second and third issues, TAC Americas asserts that errors in the issuance, service, and return of citation constitute error on the face of the record. Generally, the purpose of citation is to give the court jurisdiction over the parties and to provide notice to the defendant that it has been sued by a particular party, asserting a particular claim, in order to satisfy due process and allow the defendant the opportunity to appear and defend the action. *Conseco Fin. Servicing Corp. v. Klein ISD*, 78 S.W.3d 666, 675-676 (Tex. App.CHouston [14th Dist.] 2002, no pet.).

TAC Americas complains, *inter alia*, that the process server=s return reflects a factual impossibility. The return states that the process server received the citation on November 19, 2001, at ATime: 12:23:26@ and served it on the same day at ATime: 12:15:00.@ The times reflected are indisputably in conflict, as the citation could not have been served before it was received.

Proper citation and return of service are crucial to establishing personal jurisdiction. If the return of service does not strictly comply, then the service is invalid and *in personam* jurisdiction cannot be established. *Union Pac. Corp. v. Legg*, 49 S.W.3d 72, 79 (Tex. App.CAustin 2001, no pet.). **There are no presumptions in favor of a valid issuance, service, and return of citation in the face of an attack on a default judgment by restricted appeal. *Primate Constr., Inc. v. Silver*, 884 S.W.2d. 151, 152 (Tex. 1994); *Renaissance Park v. Davila*, 27 S.W.3d 252, 255 (Tex. App.CAustin 2000, no pet.). For a default judgment to withstand direct attack, the record must show strict compliance with the Texas Rules of Civil Procedure governing citation and return of service. *Id.* (citing *Stubbs*, 685 S.W.2d at 644). And a plaintiff defending a default judgment must show strict compliance with the procedural rules governing citation and return of service. *Silver*, 884 S.W.2d**

4

**151 at 152.** This Court has said that A[v]irtually any deviation will be sufficient to set aside the default judgment@ in a restricted appeal. *Becker v. Russell*, 765 S.W.2d 899, 901 (Tex. App.CAustin 1989, no writ).

The procedural rules concerning service of process and return of citation must be read in harmony. AWe cannot construe a rule in a vacuum; we must consider all rules pertinent to the problem, and harmonize them if possible.@ *Templo Ebenezer, Inc. v. Evangelical Assemblies, Inc.*, 734 S.W.2d 770, 772 (Tex. App.CAmarillo 1987, no writ). Rules 16, 105, and 107 each pertain to service. *See* Tex. R. Civ. P. 16, 105, 107. We may not isolate one rule and disregard the others in order to force a meaning the other rules would not permit. *Templo Ebenezer*, 734 S.W.2d at 772.

Rule 16, found in the AGeneral Rules@ section of the Texas Rules of Civil Procedure, states that A[e]very officer or authorized person shall endorse on all process and precepts coming into his hand the day and hour on which he received them . . . and *the time* and place *the process was served* and shall sign the returns officially.@ Tex. R. Civ. P. 16 (emphasis added). Rules 105 and 107 are found in section 5 of the rules, those pertaining specifically to ACitation.@ Rule 105 requires that A[t]he officer or authorized person to whom process is delivered shall endorse thereon the day and hour on which he received it.@ Tex. R. Civ. P. 105. Rule 107 provides that Athe return of the officer or authorized person executing the citation shall be endorsed on or attached to the same; *it shall state when the citation was served*.@ Tex. R. Civ. P. 107 (emphasis added). A[T]he term >process= refers to the means by which a court compels compliance with its demands.@ 62 Am. Jur. 2d *Process* ' 1 (1990). A[A] citation is a writ of the court addressed to an officer of the court, and commands him to do certain things.@ *Carpenter v. Anderson*, 33 Tex. Civ. App.

**5**

484, 77 S.W. 291, 293 (1903, writ ref=d).  AA citation is usually the original process in any proceeding where used, and is in that respect analogous to the writ of capias or summons at law, and the subpoena in chancery.@ 72 C.J.S. *Process* ' 2 (1987).  Probably because it is axiomatic that a Acitation@ is a Aprocess,@ Texas courts do not seem to have considered whether rule 16, on the one hand, and rules 105 and 107, on the other, require the same actions by the process server.

**The Boothes argue that the hour of service is immaterial and inconsequential. They contend that a precise statement of time is only necessary to chronicle when the citation came into the officer=s possession, and not when the service was executed.  But Rule 16 explicitly requires the document to affirmatively state A*the time* . . . the process was served.@ Tex. R. Civ. P. 16 (emphasis added).  Although the Boothes, relying on *Brown-McKee, Inc. v. J.F. Bryan & Associates*, 522 S.W.2d 958, 959 (Tex. Civ. App.C Texarkana 1975, no writ), contend that redundant or surplus matter on the face of a return should be disregarded, we disagree that the time of receipt or service of the citation is either redundant or surplusage.  Not only are such times required by the rules of procedure, but also the return in *Brown-McKee* did in fact reflect the time of the citation=s delivery.  *Id.*  Thus, with the exception of generally condemning redundancies and surplusage, *Brown-McKee* does not aid this Court in the resolution of the issue before us.  Read in conjunction with rules 16 and 105, rule 107=s use of Awhen,@ instead of Atime@ or Ahour,@ does not provide a different sufficiency test.  Therefore, we cannot say that notation chronicling the exact time service was executed is Aredundant or surplus matter@ to be disregarded, as the Boothes contend.**

The return purports to state the time service was executed.  However, the return of service does not strictly comply with the rules of civil procedure because the return indicates that the process server delivered the documents at ATime:  12:15:00,@ but that the documents first came into his hand at ATime:  12:23:26.@ The process server could not have executed service before receiving the citation.  The parties do not direct us to, nor have we found, any authority directly on point.  TAC Americas relies on *Grammar v. State* in which the trial court rendered a default judgment against the sureties on a bail bond.  89 Tex. Crim. 187, 230 S.W. 165, 165 (1921).  The citation=s return stated that the citation was received by the process server on January 23, *1920*, but was executed on February 2, *1912*.  *Id.*  In reversing the trial-court judgment, the court of criminal appeals found the law well settled:  A[T]he service on the sureties is so defective in this case that it will not support the final judgment by default taken thereon . . . .  It is not necessary to quote authorities for the purpose of showing that this character of return is insufficient to support a judgment by default . . . .@ *Id.*

The Boothes, although not attempting to distinguish *Grammar*, counter with *Clark v. Wilcox*, 31 Tex. 322 (1868).  In *Clark*, the return was silent as to any event time; the process server simply noted that the citation was received on April 5, 1860, and executed on Athe 7th of the same month.@ *Id.* at 328.  The Boothes argue that *Clark* supports the proposition that A[t]o the extent the time of service acts must be recorded on the return, the requisites are the day, month, and year, and no more.@  The *Clark* court, however, was not directly concerned with a temporal issue.  Stating that it refused to Ayield to strict grammatical rules,@ the supreme court

7

held that a return=s notation that it was executed by Adelivering in person to Andrew Herron a certified copy of petition and copy of this writ@ satisfied the statutory requirement that the process server was to execute the process Aby delivering to the party or parties in person upon whom he is required to serve it a copy thereof . . . ,@ the argument being that the location of the phrase Ain person@ in the return indicated that the process server delivered the citation *himself*, as opposed to serving *Herron*. *Id.* at 328-31.[1] The Boothes= argument is based on *obiter dictum* found in the court=s general discussion of what was then required by statute to appear in a return:

> [The law], among other things, requires that the return shall state Afully the time and manner of service.@ *This does not mean senseless or unnecessary details of the act of service and of the time when performed*; such, for example, as where the officer should note the hour of the day, as well as the day of the month and the year, and couple with it a statement of the manner in which he approached the party served, the conversation that ensued, the attitude which he assumed in the final act of delivering the papers, and his exit from the scene of his labors. *The manner is personal service, and the time the day, month, and year*; and it was because this manner of service was not stated in the return of the officer, in the case of Graves v. Robertson, [22 Tex. 130 (1858),] that it was held insufficient. The return in that case was as follows: AExecuted August 10, 1857, by serving defendant with a true copy of this writ and a certified copy of plaintiff=s petition.@

---

[1] Writing for the court, Justice Hamilton observed:

> There can be no reasonable doubt as to what was intended to be expressed, and the objection made is being critical overmuch. If the same strictness of grammatical construction contended for here were applied to all the records and judgments in the courts of the country, they would be swept as with a tornado, and judicial proceedings would fall around us like leaves in autumn.

*Clark v. Wilcox*, 31 Tex. 322, 331 (1868).

*Id.* at 329 (emphasis added).[2]



---

[2] The *Robertson* court held that the recitation "serving the defendant" was defective for not "*stating fully* the manner of service." *Graves v. Robertson*, 22 Tex. 130, 133 (1858). "We will require the return to show that copies of the writ and petition were delivered to the party upon whom the officer is required to serve them." *Id.*

*Clark* generally has been cited only for the proposition that the mere omission of the hour of service will not be fatal. *See, e.g.*, 3 Roy W. McDonald & Elaine A. Grafton Carlson, *Texas Civil Practice* ' 11:66 (2d ed. 2001).[3] But the facts of this case do not present this Court with a problem of omission. Rather, we are presented with a problem of commission. We need not, and do not, consider whether the citation would support the default judgment had the return contained *no* reference to the time of service. However, we cannot ignore temporal references in the citation=s return that are nonsensical and incapable of reconciliation.

It is the responsibility of the party requesting service, and not the process server, to see that process is properly accomplished. *Silver*, 884 S.W.2d at 153 (citing Tex. R. Civ. P 99(a)). This responsibility extends to seeing that service is properly reflected in the record. *Id.* The rules of civil procedure also contain an error-correcting provision. Rule 118 allows for liberal amendment of the return of service in order to show the true facts of service. *Id.* (citing Tex. R. Civ. P. 118). And A[i]f the facts as recited in the [process server=s] return . . . are incorrect and do not show proper service, the one requesting service *must amend the return prior to judgment*.@ *Id.* (emphasis added). This is not a new concept. *See Graves v. Robertson*, 22 Tex. 130, 133

---

[3] *Clark* is of dubious precedential value. The United States Congress refused to approve the Texas Constitution of 1866. *See* Marian Boner, *A Reference Guide to Texas Law and Legal History* 29 (1976). AFrom 1867 to 1870, the Texas Supreme Court (known as the Military Court) was composed of justices appointed by the military commander of Texas [General Philip H. Sheridan] during Reconstruction. The decisions of the Military Court . . . lacked Texas constitutional basis and are generally not given precedential weight.@ *Texas Rules of Form* 9 n.3 (9th ed. 1997); Boner, *supra*, at 29 (ASince [the Military Court] had no constitutional basis, its decisions are generally considered to have little or no precedential value.@); *see also Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 654 (Tex. 1988) (Robertson, J., dissenting) (reliance on authority from reconstruction era should be discouraged).

(1858) (AIt is an easy matter for the parties interested, before asking the courts to render a judgment by default, to look to the return; and if it be not in proper form, in almost every case, the officer who made the return can be brought into court to amend it.@). The Boothes, however, did not seek to amend the return of service. As a result, there remains an obvious defect on the face of the record. The return presents an irreconcilable inconsistency in the times of receipt and execution; it must be held invalid. Because it is impossible for the process server to have served the documents before he received them, we hold that error appears on the face of the record.

AFor well over a century, [the Texas Supreme Court] has required that strict compliance with the rules of service of citation affirmatively appear on the record in order for a default judgment to withstand direct attack.@ *Silver*, 884 S.W.2d at 152 (citing *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990); *Uvalde County Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 886 (Tex. 1985); *McKanna v. Edgar*, 388 S.W.2d 927, 929 (Tex. 1965); *Flynt v. Kingsville*, 125 Tex. 510, 82 S.W.2d 934, 934 (1935); *Sloan v. Batte*, 46 Tex. 215, 216 (1876); *Roberts v. Stockslager*, 4 Tex. 307, 309 (1849)). We conclude that the record does not affirmatively show strict compliance with the Texas Rules of Civil Procedure relating to service and return of citation. TAC Americas= second and third issues are sustained.[4]

**CONCLUSION**

---

[4] Because we have sustained TAC Americas= second and third issues on this basis, we need not address either TAC Americas= remaining allegations under those issues or its first issue. *See* Tex. R. App. P. 47.1 (opinions to be as brief as practicable).

11

**We reverse the judgment of the district court and remand the case for further proceedings not inconsistent with this opinion.**


Lee Yeakel, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Reversed and Remanded

Filed:   December 12, 2002

Publish